McKinney, J.,
delivered the opinion of the Court.
Francis H. Pugh was arrested on a warrant issued by a justice, for the murder of J. P. Thompson, and was bound over to the Circuit Court of Giles to answer the charge. The plaintiffs in error entered into a recognizance in the sum of $3,000, jointly and severally, for the appearance of the prisoner on the second Monday of the December Term of said Court, 1856.
The prisoner failing to appear, a forfeiture was entered against him and his bail, upon the recognizance; and scire facias having been served on the bail, severally, they appeared and demurred. The demurrer was overruled, and final judgment rendered against them. From this judgment the bail have prosecuted a writ of error to this Court.
The first error assigned is, that a justice of the peace, by our law, has no legal authority to take a recognizance; and that, consequently, the entire proceedings are null, and of no effect.
The authority of a justice to take a recognizance, *235 seems to have "been, always, tacitly conceded hy our Courts from the earliest period of our judicial history. Numerous cases, necessarily involving the question, are to he found in our books — in none of which, nor, indeed, so far ,as we are aware, in any case before the present, was any point made as to the power of the magistrate to take bail in this form. If the question of power were a doubtful one, so long and universal an acquiescence in its exercise ought alone, perhaps, to be now held sufficient to have conclusively settled it. But we do not regard it as a doubtful question. We think it clear that the power exists by statutory enactments.
By the act of 1715, ch. 16, § 1, in all criminal offences that are bailable by law, the committing magistrate is required to “ admit the party to bail.” The act is silent as to the manner or form in which bail shall be t-aken, whether by bond or recognizance, for the appearance of the prisoner before the Court to which he is bound. But the same section makes it the duty of the magistrate to bind over the prosecutor and witnesses for the State, likewise, to appear at the Court to which the prisoner is bound; and in express terms prescribes the manner in which they shall be bound, namely, by “ recognizance, with good and sufficient securities.” The power being thus expressly given to take a recognizance from the prosecutor and witnesses, it would seem absurd to deny the authority to take a recognizance from the party accused.
There is certainly some plausibility in the suggestion, that, in some of our statutory enactments, the term “recognizance” has been used without regard to its strict legal import, and as obviously meaning a bond, *236 rather than a recognizance properly so called; as in the act of 1805, ch. 37, § 1, which directs the sheriff, on executing a capias on an indictment, to take a recognizance for the appearance of the defendant; and so in other instances that might he mentioned. But notwithstanding this apparently loose use of the term in some instances, we are not prepared to admit that, in the act of 1715, it was not used, and intended to be understood, in its proper legal sense.
The strongest argument against the power of the justice, is the apparent incongruity of holding that a magistrate, whose court is not a Court oj Record, may take an obligation, the legal efficacy of which depends upon the fact of its being made of record.
It is true that, in its technical sense, a recognizance “is an obligation of record entered into before a Court, or officer duly authorized for that purpose.” 2 Bl. Com., 341; 1 Chitty’s, C. L., 90. But then, in the nature of things, there is no legal incongruity, or absurdity, in delegating the power to take hail, in this form of obligation, to a ministerial officer, or to a magistrate clothed with judicial power, though his Court he not a Court of Record. It is a matter of positive law, resting in the discretion of the Legislature, by whose will, a magistrate or officer, either judicial or ministerial, may, for a particular purpose, be invested with a power more properly appertaining to a Court of Record.
The manner of taking bail, in itself considered, is not very important; whether the obligation be in the form of a bond executed by the parties; or a recognizance, which need not be signed by the parties, the acknowledgment being reduced to writing by the magis *237 trate, and attested by him, is merely a matter of form. But the legal consequences of these obligations are, in some respects, very different; and it is in view of these differences that the question derives all its importance.
It was settled by this Court, in the case of Barkley v. State, Meig’s Rep., 93, that a recognizance taken by a magistrate when filed in the Circuit Court, becomes a part of the record of the proceeding in that Court, and is' thereby invested with the dignity and verity which, by law, appertain to records; so that the party is precluded from availing himself of the plea of non est factum to such recognizance.
Again: A recognizance forms a direct and specific lien upon all the lands owned by the party at the time of its acknowledgment, or afterwards acquired by him. This is unquestionably so, of a recognizance entered into in a Court of Record, as held by this Court in the case of The State v. Winn, 3 Sneed, 393. And from the force and effect attributed to a magistrate’s recognizance, upon its return into a Court of Record, in Barkley v. The State; the legal consequence, as respects the lien, must necessarily be the same; whether the lien in the latter case shall be held to attach, only, upon the return of the recognizance into Court; or, by relation, from its date, is a question upon which we need express no opinion at present.
The next error insisted on, is, that the judgment nisi is defective, in omitting to show that the recognizance was returned into the Circuit Court of Giles. This fact, it is true, is not expressly stated in the judgment, but it- is stated that it appeared to the Court that such a reco-gniznce (the substance of which is recited in the *238 judgment) had been entered into before the committing magistrates; and this, we think, is sufficient. From the statement, that it “appeared to the Court” that such a recognizance had been taken, it must be held, by necessary implication, that it had been returned, aná was present before the Court when the judgment was entered, for the fact of its existence could not otherwise have appeared to the Court. The case of The State v. Arledge, 2 Sneed, 229, does not support this objection to the interlocutory judgment.
The third error relied on, is, that the forfeiture was entered on the i9th day of December, 1856, and the scire facias does not show that the day of the forfeiture was the second Monday, or a day subsequent thereto, of the December Term of the Court; and, therefore, it is argued it does not appear that the forfeiture was regularly entered. This objection is not well founded.
It is well settled, that the Courts will take judicial notice of the terms of the several Courts within the territorial limits of the State, and the days on which the terms commence. By this means we learn that the day on which the forfeiture was taken, was a day subsequent to the “second Monday” of the term to which the prisoner was recognized to appear. This is sufficient. Matters of which the Courts will take judicial notice need not, generally, be averred in pleading.
The fourth error alleged, is, that it does not appear from the magistrate’s proceedings, as recited in the scire facias, that the prisoner was adjudged guilty, by the justices, of the offence charged; without which, it is argued, they had no power to bind him over to answer said charge. This is a mistaken conclusion. No formal *239 judgment of the guilt of the accused, by the committing magistrate, is required. The adjudication, that the party shall stand committed, or give hail for his appearance to answer the charge before the tribunal having cognizance of the offence, is a sufficient performance of the duty imposed by law on the examining magistrate. More than this, on his part, would he nugatory.
The result is, that there is no error in the record, and the judgment is affirmed.